UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOLOTOV PAULING,

    Petitioner,

v.

ROB MCKENNA, Attorney General of the State of Washington,

    Respondent.

CASE NO. C04-2203C

ORDER

This matter comes before the Court on Molotov Pauling's petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. No. 1), the Report and Recommendation of United States Magistrate Judge James P. Donohue ("R&R") (Dkt. No. 26), Petitioner's objections to the R&R (Dkt. No. 28), and Respondent's response to Petitioner's objections (Dkt. No. 32). Having reviewed the materials submitted by the parties and the complete record, and finding that oral argument is not necessary, the Court hereby finds and rules as follows.

**I.    BACKGROUND**

On March 29, 2000, petitioner Molotov Pauling was convicted at a bench trial of two counts of second degree extortion under section 9A.56.130 of the Washington Revised Code. (Dkt. No. 12 Ex. 1.) Pauling threatened to, and actually did, disseminate nude pictures of a former girlfriend in an attempt to

ORDER – 1

collect from the girlfriend a valid $5,000 small-claims judgment he had against her. *State v. Pauling*, 69 P.3d 331, 332 (Wash. 2003) (*en banc*). Petitioner was sentenced to ninety days in county jail, barred from contacting the victim, and ordered to attend a domestic violence treatment program, which he was continuing to attend at the time he filed this petition. (Dkt. No. 12 Ex. 1.)

Pauling appealed his conviction to the Washington State Court of Appeals. *State v. Pauling*, 31 P.3d 47 (Wash. Ct. App. 2001), *rev'd*, 69 P.3d 331 (Wash. 2003). The court of appeals held that the extortion statute was unconstitutionally overbroad because it "substantially burdens a wide range of protected speech." *Id*. at 52. The court specifically determined that the statute did not contain an element of wrongfulness and that such an element could not be engrafted onto the statute. *Id*. at 51. The extortion statute was invalidated and the court reversed Pauling's conviction. *Id*. at 52.

The State appealed to the Washington State Supreme Court, which agreed with the court of appeals that the extortion statute prohibited a substantial amount of constitutionally protected speech. *Pauling*, 69 P.3d at 335–36. However, the supreme court saved the statute from invalidation by engrafting a limiting construction onto it, requiring that a conviction be based on a "lack of nexus" between the threat and a claim of right. *Id*. at 336. Applying the statute as construed, the supreme court concluded that Pauling's threats had no nexus to his claim of right to the small-claims judgment against the victim. *Id*. at 337. The supreme court also held that a remand was not required because the findings of the trial court "satisf[ied] the nexus limiting construction" engrafted on to the statute by the court. *Id*. Thus, the court of appeals decision was overturned and Pauling's conviction was reinstated. The United States Supreme Court denied Pauling's petition for writ of certiorari. *Pauling v. Washington*, 540 U.S. 986 (2003).

On October 27, 2004, Pauling filed with this Court a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. No. 1.) Magistrate Judge Donohue determined, in his R&R, that the decision by the Washington State Supreme Court was not objectively unreasonable. (Dkt. No. 26.) In his objection to the R&R, Pauling continues to maintain that the Washington State Supreme Court's decisions not to

ORDER – 2

invalidate the extortion statute and not to remand his case back to the trial court were objectively unreasonable. (Dkt. No. 28.)

## II. ANALYSIS

### A. Subject Matter Jurisdiction over Pauling's Petition

The State argues that the Court lacks jurisdiction under 28 U.S.C. §§ 2241 and 2254 because Pauling was not confined or under supervision by the state Department of Corrections when he filed his habeas corpus petition. The Court has jurisdiction over a habeas petition only when the petitioner is "in custody" at the time his or her petition is filed. 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989). The term "in custody" is not interpreted to require a petitioner to be physically confined to challenge his sentence on habeas corpus. *Maleng*, 490 U.S. at 491. Rather, to satisfy the "in custody" requirement the petitioner need only demonstrate that he is subject to a significant restraint on his liberty not shared by the public generally. *Dow v. Circuit Court of the First Circuit*, 995 F.2d 922, 923 (9th Cir. 1993) (citing *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). For example, the court in *Dow* found that the petitioner was "in custody" when all that remained of his sentence was his mandatory attendance at an alcohol rehabilitation program. *Id*. The court reasoned that the sentence requiring the petitioner's physical presence at a particular place significantly restrains his liberty to do those things free persons in this country are entitled to do. *Id*.

Similar to the petitioner in *Dow*, Pauling's sentence requires him to attend domestic violence treatment. (*See* Dkt. No. 12 Ex. 1.) On March 10, 2005, almost five months after filing his petition, Pauling had four more monthly sessions to attend before successfully completing his domestic violence treatment program. (Dkt. No. 17 Ex. B, Waterman Decl.) This mandatory attendance substantially limited his freedom over other free persons in the United States. Therefore, the Court finds that Pauling was "in custody" at the time he filed his petition[1] such that the Court has jurisdiction to hear his case.

---

[1] Even assuming that Pauling has now completed his treatment program, this does not moot his petition. *See Chaker v. Crogan*, --- F.3d ---, 2005 WL 2978900, at *2 (9th Cir. Nov. 3, 2005).

ORDER – 3

B.  *Pauling's Objections to the R&R*

   1.  *Applicable Legal Standards*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition cannot be granted unless a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is contrary to Supreme Court precedent if the state court (1) arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) confronted facts that are materially indistinguishable from relevant Supreme Court precedent but arrived at an opposite conclusion. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" of Supreme Court law occurs when the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the prisoner's case. *Rompilla v. Beard*, 125 S. Ct. 2456, 2462 (2005). Thus, that state court's decision must have been not only incorrect or erroneous, but objectively unreasonable. *Id.*; *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

Under these limitations, the Court reviews the record *de novo* when considering objections to a magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1). The Court is to look at the state's last reasoned decision in determining whether Supreme Court law was unreasonably applied, which in this case is the decision from the Washington State Supreme Court. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Pauling objects to the R&R and asserts that the Washington Supreme Court's (1) decision to narrowly construe the statute to find it constitutional, and (2) refusal to remand the case for a new trial after construing the statute, are unreasonable applications of Supreme Court precedent.

   2.  *The Washington Supreme Court's Decision to Construe the Extortion Statute Narrowly Was Objectively Reasonable.*

Under the First Amendment overbreadth doctrine, a litigant may mount a facial attack on a statute that restricts protected speech even if the litigant's own speech is unprotected. *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980); *Broadrick v. Oklahoma*, 413 U.S. 601, 612

ORDER – 4

(1973). The Supreme Court has stated firmly that to invalidate a statute on First Amendment overbreadth grounds, it must be shown that the statute punishes a *substantial amount* of protected free speech when judged in relation to the statute's plainly legitimate sweep—unless a limiting construction so narrows it as to remove the threat to, or deterrence of, constitutionally protected expression. *Virginia v. Hicks*, 539 U.S. 113, 118 (2003); *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (citing *Broadrick*, 413 U.S. at 612–15). "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984). "Where a state statute challenged for overbreadth has been construed by the state's highest court, the scope of the statute is to be assessed in light of the construction that court has given." *Turney v. Pugh*, 400 F.3d 1197, 1201 (9th Cir. 2005) (citing *Osborne v. Ohio*, 495 U.S. 103, 113 (1990)). Finally, finding a statute invalid because it is overbroad is considered "strong medicine" only to be employed "as a last resort." *Broadrick*, 413 U.S. at 613.

Pauling argues that the state supreme court's decision to narrowly construe the statute is objectively unreasonable because, even with the narrowing construction, the statute prohibits a substantial amount of speech that is protected by the First Amendment. This argument lacks merit for a number of reasons.

        a.    *The statute, as narrowly construed, will not restrict a substantial amount of protected speech.*

First, Pauling poses hypothetical examples of speech he alleges are prohibited by the extortion statute but are forms of constitutionally protected speech. The supreme court construed the extortion statute to require that the threat being made lack a nexus to a plausible claim of right—that is, that the defendant's threatened actions have no logical relationship to the claim of right to the property or services for which the threat was made. *See Pauling*, 69 P.3d at 336–37. Under that construction, nearly all of Pauling's hypotheticals would be beyond the purview of the statute. This is because *acting* on such

ORDER – 5

threats (as opposed to merely expressing them) would have the potential to achieve their respective goals; thus each threat is logically related, or has a nexus, to the claim of right. *See United States v. Jackson*, 180 F.3d 55, 70 (2d Cir. 1999). For example, even after a company follows through on a "threat" to publicly list your phone number, you may still be motivated (likely more so) to pay a fee for your number to be unlisted; even after boycotts are instituted against companies, there is still an incentive for the targeted companies to stop their activities that sparked the boycotts; and even after the WTO protests, the targeted entities still had an incentive to cede to the protestors' demands. In these examples, carrying out the threat does not frustrate or exhaust the objectives of the threat: an incentive still exists for the target of the threat to take the desired action even *after* the threat has been carried out. *Id.* In contrast, when the threat lacks a nexus with any legal right, carrying out the threat reduces the likelihood that the target will act as desired; once the threat is acted upon, the target no longer has any incentive to act.

Like the latter situations, action on Pauling's threat to distribute the pictures actually frustrated his attempt to collect his judgment: after the pictures were distributed, the victim had no more incentive to pay the money than she had before the threat was made—the damage had already been done. There are many ways to attempt to collect a valid judgment, but threatening to post explicit pictures is quite different than threatening to institute contempt proceedings or to execute a lien on the debtor's property.[2] If action is taken on the latter two threats, the target of the threat has even more incentive to pay the judgment than before the threat was made. In contrast, distributing the pictures leaves no further incentive to pay the judgment over and above the independent force of the judgment itself.[3] Therefore,

---

[2] The trial court implicitly drew this distinction when it found Pauling not guilty on Count III of extortion. The basis of that count was Pauling's letter to the victim containing a threat to take legal action such as supplementary proceedings, garnishing wages, or executing a property lien to collect the small-claims judgment. (Trial Tr. 145.) The trial court thus appeared to conclude that these threats to invoke judicial processes bore a direct relation to the small-claims judgment, unlike the threat to distribute explicit pictures that formed the basis of Counts I and II.

[3] The lack-of-nexus requirement engrafted on to the statute by the state supreme court is not to be confused with the "intent" element of extortion: under the statute, the defendant's threat must

ORDER – 6

the lack-of-nexus requirement engrafted on to the statute by the state supreme court excludes the possibility that a substantial amount of protected speech will be prohibited under the statute.

> b. *No case law suggests that activities restricted by the narrowly construed statute qualify as constitutionally protected expression.*

Second, Pauling fails to cite any United States Supreme Court precedent establishing that activities within the ambit of the construed extortion statute are, in fact, protected speech. The only Supreme Court case Pauling relies on, *Bridges v. Superior Court of California*, 314 U.S. 252 (1941), says nothing about whether Washington's extortion statute is overbroad: *Bridges* (1) deals with criminal contempt, not extortion; (2) does not address anything similar to the lack-of-nexus requirement the Washington supreme court engrafted on to the extortion statute; and (3) focuses on whether the specific speech in question is protected speech, not whether the criminal contempt statute is substantially overbroad. 314 U.S. at 272–75.

In fact, threats made for extortionate purposes are not forms of protected speech. The statute in question is limited to extortionate threats, and "does not regulate speech relating to social or political conflict, where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas." *United States v. Hutson*, 843 F.2d 1232, 1234–35 (9th Cir. 1988) (finding federal extortion statute not unconstitutionally overbroad). The lack-of-nexus requirement ensures that the extortion statute reaches only extortionate speech that is within the State's power to prohibit. *See Hutson*, 843 F.2d at 1235 (citing *United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975) ("[E]xtortionate speech has no more constitutional protection than that uttered by a robber while ordering his victim to hand over money.")). Indeed, extortion statutes "are generally upheld as

---

communicate an intent to harm the victim in hopes that the defendant's objective will be met. *See Pauling*, 69 P.3d at 333. The trial court found that Pauling's threat satisfied this requirement by communicating an intent to distribute the pictures (and thereby harm the victim) to pressure her to pay the small-claims judgment. (Trial Tr. 141–44.) As explained below, this finding of *intent* does not preclude a finding that Pauling's threat lacked a logical *nexus* to his claim. *See infra* note 4.

ORDER – 7

constitutionally valid, on the basis that extortion requires the unlawful compelling of the victim to give up property; it is an extension of theft." *Ivan v. City of Seattle*, 856 P.2d 1116, 1120 (Wash. Ct. App. 1993) (citing *State v. Robertson*, 649 P.2d 569, 581–82 (Or. 1982) (distinguishing unconstitutionally overbroad coercion statute from extortion statutes)); *see also Stein v. Commonwealth*, 402 S.E.2d 238, 241 (Va. Ct. App. 1991) (extortion statute does not limit or punish speech, but only prohibits *act* of employing speech for extortionate purposes).

     c. *Any potential for an overbroad application of the statue is insubstantial compared to its legitimate scope.*

  Third, there is no indication that Washington would likely employ the narrowly construed statute to reach a substantial amount of constitutionally protected speech. If Washington does attempt to apply the statute impermissibly, the courts will refuse to permit prosecution based either on invalid construction of the statute or by holding that the speech is constitutionally protected. *See State v. Musser*, 977 P.2d 131, 133 (Ariz. 1999) (finding that Arizona's extortion statute did not reach substantial amount of protected speech). Any misuse of the extortion statute can be cured through a case-by-case analysis of specific facts; such "as applied" constitutional challenges will prevent the prosecution of protected speech. *Id*. Thus, there is no realistic danger that the statute will significantly compromise the First Amendment rights of parties not before the court, such that the statute must be condemned as unconstitutional on its face. *Taxpayers for Vincent*, 466 U.S. at 801; *see also Gammoh v. City of La Habra*, 395 F.3d 1114, 1122 (9th Cir. 2005) (finding potential for overbroad application insubstantial "'in relation to the statute's plainly legitimate sweep'") (quoting *Broadrick*, 413 U.S. at 612–15)).

  In sum, the Court finds that the extortion statute, as construed by the Washington State Supreme Court, does not prohibit a substantial amount of protected speech.

    3. *The Washington Supreme Court's Decision To Not Remand Petitioner's Case Was Objectively Reasonable.*

  Pauling also argues that even if the state supreme court's narrowing construction preserves the statute, the court's subsequent decision not to remand the case to the trial court was objectively

ORDER – 8

unreasonable. Pauling asserts that this decision violated his rights to due process.

A court may construe a statute to avoid overbreadth problems and then apply that construed statute to conduct occurring prior to the construction. *Osborne v. Ohio*, 495 U.S. 103, 119 (1990). However, when relying on such a retroactive interpretation, the court must ensure that the defendant had fair warning before trial that his conduct was criminal. *Id.* at 115–16. When a state supreme court "narrows an unconstitutionally overbroad statute, the [s]tate must ensure that defendants are convicted under the statute as it is subsequently construed and not as it was originally written." *Id.* at 118 (stating holding of *Shuttlesworth v. Birmingham*, 382 U.S. 87 (1965)). If the construction given the statute by the state court is a radical and unforeseen departure from prior law, its retroactive application is a violation of due process. *Hayes v. Woodford*, 301 F.3d 1054, 1088 (9th Cir. 2002); *see also Rogers v. Tennessee*, 532 U.S. 451, 461 (2001) (state supreme court's construction violates due process only when it is "unexpected and indefensible by reference to law which had been expressed prior to conduct in issue" (internal citations omitted)).

Even before the Washington Supreme Court's narrowing construction of section 9A.56.130, Pauling was on notice that his conduct was illegal. The state supreme court narrowly construed the overbroad statute to limit the types of speech it prohibited, but did not construe the statute in a manner that created a completely new legal duty, as in *Shuttlesworth*. 382 U.S. at 91–92. The court also did not unexpectedly broaden the statute in a manner that failed to provide Pauling fair notice prior to trial. *See Hamling v. United States*, 418 U.S. 87, 116 (1974) (no lack of fair notice when court construed meaning of federal statute more definitively in its application). *Cf. Rabe v. Washington*, 405 U.S. 313, 315 (1972) (petitioner had no warning that his actions were proscribed when court unexpectedly broadened statute); *Bouie v. City of Columbia*, 378 U.S. 347, 353–54 (1964) (construction of criminal statute encompassing conduct not previously addressed by statute can violate due process). Because the state supreme court narrowed the statute, rather than expanding it, Pauling was given fair notice that his conduct was illegal such that his due process rights were not violated.

ORDER – 9

Furthermore, the Washington Supreme Court correctly held that Pauling's conviction comported with the statute as narrowly construed. In *Shuttlesworth*, remand was necessary because the United States Supreme Court could not determine whether the state courts judged the petitioner by the statute as constitutionally construed. 382 U.S. at 93. The same is not the case here: the Washington State Supreme Court found that the undisputed record supported Pauling's conviction under the statute as narrowly construed. *Pauling*, 69 P.3d at 337. As the R&R correctly noted, the supreme court "explicitly analyzed whether the trial court had determined whether petitioner's actions satisfied its new construction . . . and concluded that the trial court had found beyond a reasonable doubt that petitioner's actions failed to satisfy the requirement that there be a nexus between his threat and claim of right."[4] (R&R 10–11.)

In sum, the Washington Supreme Court correctly held that a remand or a new trial was not required. Based on the trial court's undisputed factual findings, Pauling's conduct clearly violated the extortion statute as constitutionally construed by the supreme court.

//
//
//

---

[4] It is Pauling who confuses the lack-of-nexus requirement by inaccurately defining it as the absence of any "law permitting linkage between the [the threat and its objective.]" (Pet'r Obj. 16.) The trial court did find a "linkage" of intent between Pauling's threats and his goal—specifically, that Pauling intended that his threat to distribute the explicit pictures would compel his victim to pay the small-claims judgment. However, this finding of malicious *intent* does not preclude the state supreme court's holding that the record demonstrated a lack of logical *nexus* between Pauling's threats and his objectives, as required by the narrowing construction. *See supra* note 3.

ORDER – 10

### III.     CONCLUSION

For the foregoing reasons, the Court ADOPTS the Report and Recommendation. Molotov Pauling's petition is therefore DENIED. The Clerk is DIRECTED to send copies of this Order to Petitioner, Respondent, and Magistrate Judge Donohue.

SO ORDERED this 22nd day of November, 2005.

*[signature]*

UNITED STATES DISTRICT JUDGE

ORDER – 11